DAVID M. ROSENBERG-WOHL (Cal. Bar No. 132924)
HERSHENSON ROSENBERG-WOHL,
A PROFESSIONAL CORPORATION
3080 Washington St.
San Francisco, CA 94115
(415) 317-7756
david@hrw-law.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FR DAT NGUYEN,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, MICHAEL V. DRAKE, CYNTHIA LARIVE, AND DOES 1-10,<br><br>　　　　　Defendants. | Case No.:  5:26-cv-03983<br><br><br>**COMPLAINT** |

**JURISDICTION AND VENUE**

1. The Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 over Plaintiff's claims arising under the laws of the United States.

2. The Court has authority to issue the declaratory relief sought under 28 U.S.C. §§ 2201 and 2202.

3. Venue lies in this district under 28 U.S.C. § 1391(b), including because (i) at least one defendant resides in the Northern District of California and all defendants reside in the State of California, and (ii) a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of California.

COMPLAINT - 1

**THE PARTIES**

Plaintiff

4. Fr Dat Nguyen is Chaplain, Newman Catholic Center – Santa Cruz ("NCC") on the UCSC campus within the Roman Catholic Diocese of Monterey, California

5. The Mission Statement of the NCC reads:

6. "Rooted in the ministry of the universal Church and in harmony with the local Bishop and faith community, Campus Ministry provides the Catholic presence on the Cal Poly, Cuesta, Cabrillo College, University of California at Santa Cruz, and California State University of Monterey Bay campuses. Proclaiming the Kingdom, the ministry challenges the campus communities to live the Good News encouraging a sense of community responsibility through the ministry of service.

Campus Ministry offers support and presence to persons in crisis and provides means for personal growth and self-development as well as for the spiritual needs of the whole community in higher education.

Offering programs that are responsive to the changing needs of students, faculty, and staff, Campus Ministry trains future leaders of the church. Teaching and learning from one another and with a collegial style of ministry and leadership, a shared vision is created stabilizing the ministry. The celebrating Christian community evolves making our Campus Ministry Center a place of hospitality, fellowship, socialization and recreation."

7. The Newman Catholic Center is one of the members of the University Interfaith Council, an organization open to all religious groups at UCSC.

Defendants

COMPLAINT - 2

8.  Defendant The Regents of the University of California ("Regents") is a public agency within the meaning of Cal. Gov't Code § 7920.525(a) and is empowered under the California Constitution, Article IX, Section 9, to administer the University of California, including UC Santa Cruz ("UCSC"). The Board of Regents is the governing body for the University of California system and under Article IX, Section 9, of the California Constitution has "full powers of organization and government." The Board of Regents has its principal place of operation in Oakland, California.

9.  Defendant Dr. Michael V. Drake is the current President of the University of California and has served in that position since August 2020. As President, Drake oversees and is responsible for the operations of the entire University of California system, which includes UCSC. Drake is sued in his personal capacity.

10. Defendant Cynthia Larive is the current Chancellor of UCSC and has served in that position since 2019. As Chancellor, Larive is the highest-ranking university official at UCSC. Larive's duties include establishing campus policies, goals, and strategy. Larive is sued in her personal capacity.

11. Plaintiff is informed and on that basis believes and alleges that most of the individual defendants live within this judicial district and are persons acting under color of state law within the meaning of 42 U.S.C. § 1983.

**FACTUAL BACKGROUND**

October 7

12. On October 7, 2023, Hamas terrorists attacked Israel, slaughtering over a thousand young people at a music concert near Re'im, the elderly and babies in small residential communities in Kfar Aza, Be'eri, Nir Oz, Nahal Oz, Re'im, Holit, Zikim, Kerem

COMPLAINT - 3

Shalom, Sufa, and the town of Sderot. It was not just the targeting of civilians that constitutes terror but the intentional fear and horror communicated through the age range of the victims and the manner in which they were killed, to say nothing of the featured sexual violence against Israeli women, including through rape and genital mutilation. Many victims could not be identified due to their condition.

13. Israel is a sovereign nation state, the only nation founded explicitly by a United Nations resolution, Assembly Resolution 181, which partitioned Palestine in 1947.

14. Ever since 1967, various parties involved in the Middle East have advanced numerous proposals for the "two state solution." This has been the express position of the United States for decades. Even today, a plurality of Americans, according to a recent Pugh poll, believe the best outcome is a two-state solution.

15. Reasonable people disagree over where these state borders should be, how they should be negotiated, and how they should be determined, and even over which parties (or members of which parties) do and don't want to reach a "solution" at a given time. Reasonable people do not believe that Palestinians should eradicate the State of Israel any more than they believe that Israel should expel the Palestinians from Gaza and the West Bank. Regardless of one's view of history, the land contains two peoples who are not going anywhere and need to find a way to live together.

16. The Israeli government of Likud, presently headed by Benjamin Netanyahu, is open to a form of Palestinian self-rule but is skeptical of a two-state solution, fearing the security of Israel's borders on the one hand and a demographic transformation of a Jewish state into an Arab state on the other.

17. The Palestinian Authority, governing in parts of the West Bank, supports a two-state

COMPLAINT - 4

solution based upon pre-1967 borders, *i.e.*, roughly based upon the Green Line, and it wants all Palestinians expelled pre-1967 to have the right to return to Palestine.

18. Hamas, governing all of Gaza, in its charter, explicitly calls for the destruction of Israel and the imposition of an Islamic state throughout historic Palestine.

19. As of October 6, 2023, the situation remained intractable. Since it assumed power in 2007, Hamas had fought no less than 4 wars with Israel, the most recent ending with an Egyptian-mediated cease fire effective May 21, 2021. On May 7, Hamas breached that cease fire and attacked again. While the earlier conflicts had been largely conducted by rocket fire, this one was a ground campaign of terror and hostage-taking.

UCSC

20. UCSC has approximately 20,000 students (undergraduate and graduate).

21. One UCSC club is Students for Justice in Palestine ("SJP").

22. SJP is a Muslim faith-and-ethnicity-based organization advocating for exclusively Palestinian Muslim rights to the land of Israel, for the eradication of Israel as a state and people and for the extermination of Jews.

23. In 2023-24 SJP was the only political student organization on campus exclusively devoted to the Palestinians; there was no organization focused on any other Arab population or ethnic group. The only other organization was Anakbayan Santa Cruz, advocating for socialism in the Philippines. There were numerous "Cultural & Identity" clubs, from the Iranians to the Afghans to the Armenians and the Jews.

24. In the aftermath of October 7, SJP adopted wholeheartedly the religious, ethnic and political position of Hamas, the government of Gaza that committed the terrorism of that day and repeatedly swore to continue it so as to remove Jewish influence from

COMPLAINT - 5

campus. SJP adopted "from the river to the sea" language, which is commonly known to indicate the establishment by bloody conquest of a Jew-free caliphate in the land of Israel, dressed as terrorists willing to kill Jews with keffiyehs concealing their identities from the fellow classmates, and acting in concerted and unpredictable ways so as to make Jewish students on campus ever anxious and fearful: by face to face assault, by masked roving bands of students throughout campus, and by blocking and shutting down campus access. The point here was not speech — that would have been conducted in accord with time place and manner restrictions — but making others fearful and reticent to express themselves due to fear of violence. To say, as SJP often does, that this conduct was not aimed at Jews but just Jews who support Israel begs the question: SJP knows well that support of Israel in some form as a homeland for Jews is a bedrock principle of Judaism, and SJP's conduct aimed explicitly to silence Jewish voices to this effect. SJP's anti-Zionism was regularly presented using antisemitic tropes of power and money, punctuated by inverted assertions of Nazism and racism.

25. UCSC promotes itself as culturally and identity diverse, specifically #1 "for racial and gender diversity in leadership" (Women's Power Gap Initiative).

26. At the beginning of the encampment, Plaintiff thought the university would take action within a few days to confirm the difference between permitted speech and unpermitted conduct, restore full campus access and assure Jews that antisemitic conduct would not be allowed to persist, but he was wrong. It took a month, half of an academic quarter, for UCSC to act. Plaintiff realized after about a week of public statements from the faculty senate, inaction from the administration and failing to enforce the rules regarding the encampment that UCSC was sympathetic to their antisemitic speech and

COMPLAINT - 6

conduct. Plaintiff found it unthinkable to make the connection yet couldn't help but see a pattern of antisemitic conduct on campus. The previous year, a group of students had gathered to celebrate Hitler's birthday, and although UCSC had condemned this unsanctioned event, it was just lip service — there were no consequences — and this year the university had allowed antisemitic conduct to grow into threatening Jewish students with destruction (of Israel, abroad; and of their safe academic environment, locally).

27. Plaintiff's Newman Catholic Center ("NCC") is located one block from the main entrance to the campus at 285 Meder Street in Santa Cruz.

28. An essential part of Plaintiff's ministry as Catholic campus chaplain at UCSC is engagement with students on campus. Each Sunday Plaintiff drives up to campus in a pickup truck carrying music instruments and sound equipment. During the week, Plaintiff takes the campus loop bus from the main entrance to access campus to meet students, post flyers, and plan events with student leadership. Plaintiff and the NCC student group meet at the Quarry Plaza each Wednesday.

29. Plaintiff and the NCC student group have always conducted themselves according to school policy. In the Spring, for example, when Newman Catholics wanted to use school table and chairs to share information with campus students and faculty about the club and what it does, they obtained a permit from SOMeCA for a weekly permitted tabling event at Quarry Plaza.

30. From May 1st until 31st, 2024, the encampment protest of Students for Justice in Palestine greatly affected Plaintiff's ministry and campus access. During that period, Newman Catholics were precluded from conducting their tabling event at Quarry Plaza

COMPLAINT - 7

because UCSC had allowed SJP to shut it down completely. One student who lost her ID card wasn't allowed to get a replacement; the ID card office is located in the bookstore by the Quarry Plaza which, due to the encampment, was closed. Because her ID is needed for the city metro bus service, she couldn't go off campus for other religious services and events such as serving the homeless in downtown Santa Cruz.

31. After about 3 weeks of encampment at the Quarry Plaza at the heart of campus, protesters moved to the base of campus at the main entrance. For the past 3 weeks, although the Quarry Plaza was shut down, Plaintiff had been able to go on campus because the campus loop bus was still serving its regular route on Coolidge and Hagar. Now, Plaintiff's access to campus was nonexistent because the campus loop bus stopped service at the main entrance. It was also during this time that the protesters became even more radical. If Plaintiff wanted to go on campus, Plaintiff had to walk up over the hill, without a sidewalk, while carrying the materials he needed to bring. Considering the hassle, and facing an unruly crowd, Plaintiff was not able to carry out his assignment as a campus priest chaplain. Plaintiff had to cancel the Wednesday weekly tabling event and meeting with students on campus; usually Plaintiff would meet with students for counseling or facilitate study sessions to go over class materials for the week.

32. Most students were not able to access Mass off campus due to the blockade either.

**FIRST CLAIM:**

**US Constitution, First Amendment, Free Exercise Clause**

33. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

34. The U.S. Constitution guarantees the free exercise of religion.

COMPLAINT - 8

35. By permitting SJP free reign of the campus and the right to control access to it, the Regents, on the one hand, and the individual defendants on the other hand, precluded Plaintiff and his organization from exercising their religious activity on campus.

36. There was no legitimate or compelling State interest for any of this, nor any narrowly tailored response to serve such an interest.

37. Plaintiff has been injured by being restricted from his ability to minister to his congregants – and on behalf of his congregants, Plaintiff claims their loss of his pastoral and communal activities.

38. As a direct and proximate result of the action and inaction of the Regents, Plaintiff has suffered injury to his civil rights and is entitled, as such, to an award of damages even if they are nominal damages.

39. Because the sort of conduct tolerated of SJP is likely to repeat, causing similar injury, Plaintiff is entitled to declaratory and injunctive relief.

**SECOND CLAIM:**

**U.S. Constitution, Fourteenth Amendment, Equal Protection Clause**

40. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

41. Under the Fourteenth Amendment of the U.S. Constitution, Plaintiff is entitled to equal protection under the laws.

42. Plaintiff's group, NCC, adheres to all UCSC rules and regulations assiduously, including seeking permits for its activities when necessary

43. UCSC treated SJP, a Palestinian Muslim organization, more favorably than NCC: (1) by allowing SJP to act without complying with campus rules; (2) by allowing SJP to interfere with permits sought by, paid for and issued to other groups; (3) by allowing a

COMPLAINT - 9

single faith group to overrun campus and dominate its messaging; and (4) by amplifying that single faith group's message of Jew hate and/or presenting its message that its vision of Islam was singularly aligned with social justice over the message of respect for difference required of other clubs.

44. There was no legitimate or compelling State interest for any of this, nor any narrowly tailored response to serve such an interest.

45. As a result, Plaintiff has been injured by losing access to an educational environment in which each faith is treated equally with dignity and without any favoritism.

46. As a direct and proximate result of the action and inaction of the Regents, Plaintiff has suffered injury to his civil rights and is entitled, as such, to an award of damages even if they are nominal damages.

47. Because the sort of conduct tolerated of SJP is likely to repeat, causing similar injury, Plaintiff is entitled to declaratory and injunctive relief.

**PRAYER FOR RELIEF**

48. Wherefore, Plaintiff respectfully requests that the Court:

    A.  Declare that the Regents violated the U.S. Constitution;

    B.  Enjoin the Regents from violating the U.S. Constitution;

    C.  Award Plaintiff nominal damages for the loss of rights;

    D.  Award Plaintiff the costs of this action and reasonable attorneys' fees; and

    E.  Award such other and further relief as the Court deems equitable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury on all issues so triable.

Dated: May 1, 2026

COMPLAINT - 10

Respectfully submitted,

*David Rosenberg-Wohl*

David M. Rosenberg-Wohl

HERSHENSON ROSENBERG-WOHL
A PROFESSIONAL CORPORATION

COMPLAINT - 11